UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
GPS INTERNATIONAL TECHNOLOGIES, INC.,

                    Plaintiff,

-against-

VERIZON COMMUNICATIONS, INC. et. al,

                    Defendants.
------------------------------------------------------------x

24-cv-07758 (ALC)

**ORDER & OPINION**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff GPS International Technologies ("GPSI" or "Plaintiff") brings this action against Defendants Verizon Communications, Inc. ("Verizon Communications"), Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") (together, the "Verizon Defendants"), Catherine Bennett ("Bennett"), and Does 1–25 (individually and collectively, "Defendants") alleging claims for breach of contract ("Count I"), breach of implied covenant of good faith and fair dealing ("Count II"), tortious interference with contract ("Count III"), tortious interference with prospective business relations ("Count IV"), fraudulent inducement ("Count V"), negligent misrepresentation ("Count VI"), and unjust enrichment ("Count VII"). Defendants moved the Court to (i) compel arbitration pursuant to the Federal Arbitration Act ("FAA"), and (ii) stay these proceedings pending the outcome of arbitration.[1] Dkt. No. 18. For the reasons outlined below, Defendants' Motion to Compel Arbitration is GRANTED and this case is STAYED pending arbitration.

---

[1] On March 19, 2025, Defendant Bennett also moved to compel arbitration and stay these proceedings, concurring with the arguments raised by the other Defendants. Dkt. No. 31.

1

# BACKGROUND

**I.     Factual Background[2]**

A.  Introduction

GPSI is a company established in 2005 that provides asset tracking solutions. Compl. ¶ 2. GPSI uses long-battery-life wireless Global Positioning System ("GPS") trackers paired with its cloud-based application, TrackFusion, to provide these services. *Id*. GPSI relies on major network carriers to operate its GPS tracking technology. *Id*. at ¶ 27. The network carriers provide GPSI with the necessary data and telemetry services to make tracking possible.

In its first few years of operation, GPSI partnered with Sprint for its data and telemetry needs. *Id*. But in December 2011, Verizon approached GPSI with a proposal to host Plaintiff's wireless tracking systems on Verizon's wireless network. *Id*. at ¶ 28. Plaintiff, intrigued by the opportunity, began modifying its wireless tracking systems to make them compatible with Verizon's wireless network. *Id*. at ¶¶ 28–30. Upon GPSI's completion of these modifications, the parties entered into the Verizon Wireless Vertical Solution Provider M2M Agreement (the "Agreement") on June 20, 2013. *Id*. at ¶ 31. Per the terms of the Agreement, GPSI was responsible for providing its clients with wireless tracking hardware and Verizon provided cellular lines and data to those customers. *Id*.

B.  The Terns of the Agreement

The Agreement required Verizon to provide a minimum of 20,000 Machine to Machine ("M2M") lines to GPSI for a fee which was paid by GPSI. *Id*. The term for each M2M line was a period of one or two years. *Id*. Thereafter, service would continue on a month-to-month basis. *Id*.

---

[2] The Court restates here only those facts necessary to the resolution of this Motion. The factual background restated here is drawn from Plaintiff's Complaint ("Compl.", Dkt. No.1) and the parties' submissions in support of (Dkt. Nos. 18–20, 27, 31, 34)  and in opposition to (Dkt. Nos. 25–26, 32–33) the pending motions.

If an M2M line was terminated before the term expired, an Early Termination Fee ("ETF") of $50.00 could be applied. If an M2M line was terminated after the term expired (i.e., in the month-to-month phase), no ETF could be applied. *Id*.

The initial Agreement set a three-year term limit for the contract and expired in 2016. Dkt. No. 19 at 2. The Agreement was subsequently amended on three separate occasions. *Id*. The Second Amended Agreement extended the initial Agreement term for a period of two years, until 2018. *Id*. at 2. Further, Section 23 of the Agreement, which was extended by the amendments, required any dispute arising under the Agreement to be resolved through arbitration before the American Arbitration Association:

> **Dispute Resolution and Mandatory Arbitration:** Should a dispute arise under this Agreement, the Parties shall meet within 30 days after Legal Notice of such dispute given to attempt to resolve the matter in good faith. Thereafter, the Parties agree to arbitrate any dispute arising out of this Agreement. Such arbitration shall be held before an independent arbitrator pursuant to the Wireless Industry Arbitration ("WIA") rules in effect at the time of the dispute, as modified by this Agreement and administered by the American Arbitration Association ("AAA"). The United States Arbitration Act, 9 USC §§1-16, as amended shall govern the arbitration. In the event of any conflict, the WIA rules shall govern. No arbitration between the Parties may proceed on a class basis or be consolidated with any other arbitration without the written consent of all Parties. If the prohibition on class arbitrations set forth above is deemed unenforceable, then neither Party shall be required to arbitrate. Any award shall be accompanied by a written opinion of the arbitrator giving the reasons for the award and shall be binding upon the Parties with no right of appeal. If for any reason the provisions of this Agreement requiring arbitration are declared unenforceable, void, or voidable, or if any action or judicial proceeding is permitted, each Party waives any right it may have to trial by jury. Notwithstanding the above, either Party may seek preliminary and final injunctive relief in the event of the unauthorized disclosure of such Party's Confidential Information or intellectual property infringement.

Bloink Decl., Ex. A at § 23 (referred to hereinafter as the, "Arbitration Clause"). Section 23 of the Agreement thus imposed three requirements for disputes arising under the agreement. First, it required that Legal Notice (as defined in the Agreement) be given; second, it required that the Legal Notice be provided in writing using one of three methods specified in Section 35 of the

3

Agreement; and third, the parties were required to meet within 30 days after the Legal Notice had been served. Dkt. No. 25 at 3–4.

C. Events Giving Rise to this Action

The Complaint alleges that in March 2018, Verizon Wireless provided notice that service would be terminated to its 2G and 3G networks (which serviced GPS's existing CDMA lines) due to a system upgrade to 4G or 5G networks (which service LTE lines). Verizon Wireless therefore advised GPS that it needed to migrate its M2M lines to the newer LTE service. Compl., ¶¶ 44–46. According to the Complaint, Verizon Wireless then charged GPSI $30,100 in early termination fees for certain lines. GPSI contends it disputed those charges and initially did not pay them.[3] Following its refusal to pay the fees, Verizon Wireless warned GPSI that service to the M2M lines would be interrupted unless it received payment for the early termination fees. After that warning, and due to continued non-payment, Verizon Wireless interrupted service to GPSI's lines. GPSI then paid the overdue $30,100 in early termination fees and asked Verizon to restore service to its M2M lines. *Id.* at ¶¶ 54–75. Verizon Wireless did so, then it invoiced GPSI for reconnection fees as part of its restoration of service to those lines; GPSI failed to pay the reconnection fees, and as a result, Verizon Wireless again interrupted service to all lines in February 2023. *Id.* at ¶¶ 76–79. Verizon's second service interruption ended the parties' business relationship. *Id.*

II. **Procedural History**

GPSI filed its Complaint on October 11, 2024. Dkt. No. 1. On December 28, 2024, Defendants moved the Court to compel GPSI to submit its claims to arbitration pursuant to the Federal Arbitration Act, the Agreement, and its subsequent Amendments. Dkt. No. 18.

---

[3] However, the Complaint does not allege that GPSI served a written notice of dispute or otherwise followed the Agreement's dispute procedures, as required by the Agreement.

Defendants also requested that the Court stay these proceedings pending the resolution of this action in arbitration. *Id*. On January 8, 2025, GPSI filed an Opposition ("Opp.") to Defendants' Motion. Dkt. No. 26. On January 15, 2025, Defendants filed a reply in further support of their Motion. Dkt. No. 27.

On February 28, 2025, Defendant Catherine Bennett was served in this matter. Dkt. No. 29. On March 19, 2025, Defendant Bennett filed a motion to compel arbitration of the claims asserted against her in the Complaint, and to join, adopt, and incorporate by reference the arguments and authorities contained in the Motion that was filed by the other Defendants (the "Motion for Joinder"). Dkt. No. 31. On April 2, 2025, GPSI opposed Defendant Bennett's Motion for Joinder. Dkt. No. 32. On April 9, 2025, Defendant Bennett filed a reply in further support of her Motion for Joinder. Dkt. No. 34.

## LEGAL STANDARD

The FAA provides that "'[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of [the] contract ... shall be valid, irrevocable, and enforceable.'" *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016) (quoting 9 U.S.C. § 2). "The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101–02 (2d Cir. 2022). The burden then "shifts to the party seeking to avoid arbitration to 'show[ ] the agreement to be inapplicable or invalid.'" *Id*. (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)). "[T]he federal policy in favor of arbitration requires that any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (internal quotation marks and citation omitted). However, this policy "does not authorize federal courts to

5

invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418, (2022). Instead, "a court must hold a party to its arbitration contract just as the court would to any other kind [of agreement]." *Id*.

Therefore, if on a motion to compel arbitration the court determines that (i) the existence of the arbitration agreement itself it not at issue, and (ii) that the dispute between the parties is within the scope of the arbitration agreement, then the court must "direct[] the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C.A. § 4; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015).

## DISCUSSION

Defendant argues that the Court should compel arbitration because GPSI signed the Agreement, which contains a valid arbitration clause encompassing its claims. GPSI does not dispute that it signed the Agreement, nor does it dispute the validity of the Agreement or the arbitration clause within it. Instead, GPSI contends that Defendants failed to fulfill three conditions-precedent to triggering the Arbitration Clause, and that Defendants waived their right to arbitration as a result of their willful misconduct. In addition, GPSI contends that Defendants Verizon Communications Inc. and Catherine Bennett were not signatories to the Agreement, so GPSI cannot be forced to arbitrate claims against them, and that GPSI's tort claims (Counts III–VII) are not arbitrable because they do not arise out of the parties' agreement. Given Plaintiff's acknowledgement here that a binding and enforceable arbitration agreement exits between the parties, all that is left for the Court to determine here is whether this particular dispute is within the scope of said arbitration agreement.

I. **Plaintiff Entered into a Valid and Enforceable Arbitration Agreement**

As discussed above, GPSI agreed to the express terms and conditions of the Agreement and all subsequent Amendments. Section 23 of the Agreement required GPSI to submit all disputes arising under the Agreement to arbitration before the AAA. GPSI signed the Agreement, as well as its subsequent Amendments, and presumably understood these terms. Therefore, as GPSI concedes, it entered into a valid and enforceable agreement, which includes the Arbitration Clause in said Agreement.

II. **The Arbitrator Should Decide Whether the Preconditions to Arbitration Have Been Met**

GPSI does not dispute the existence of a valid and enforceable agreement between the parties. Instead, GPSI argues that there are several procedures (or preconditions) in the arbitration provision that Defendants failed to meet, so the arbitration provision was not triggered and it (GPSI) cannot be compelled to arbitrate this action. The Court disagrees. The question of whether Defendants satisfied the conditions precedent to the arbitration clause is an issue of procedure that does not prevent this Court from compelling arbitration and is best resolved by the arbitrator in the first instance, not this Court.

In general, "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration. These procedural preconditions include claims of waiver, delay, or a like defense to arbitrability, as well as the satisfaction of prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate, whose effect is to determine when the contractual duty to arbitrate arises, not whether there is a contractual duty to arbitrate at all." *Olin Holdings Ltd. v. State of Libya*, 73 F.4th 92, 105 (2d Cir. 2023) (cleaned

up.). "Issues of demand for arbitration or service of a notice of intention to arbitrate are . . . procedural issues." *N. Shore Linen, Inc. v. Louis Carotenuto As President of UFCW Local 2013*, 2019 U.S. Dist. LEXIS 254715, at *18 (E.D.N.Y. Aug. 28, 2019). Further, the question of whether the parties have satisfied any procedural preconditions to arbitration is a matter appropriately decided by an arbitrator. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557-59 (1964) ("[o]nce it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator"). *See also, Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002) ("'[p]rocedural' questions . . . such as whether prerequisite steps to arbitration were completed . . . [is] for an arbitrator and not a judge to decide." (quoting *Livingston*, 376 U.S. at 577). Therefore, the Court need not determine whether Defendants adhered to the preconditions in the Arbitration Clause before referring this matter to arbitration.

### III. The Arbitrator Should Decide Whether Defendants Have Waived Their Right to Arbitration

GPSI next argues that Defendants waived their right to arbitration through their actions, which included "assessing phony and inflated 'fees' . . . unilaterally cutting off thousands of [GPSI]'s customer lines . . . [and outsourcing] 'fees' to Verizon's collections agency, which began badgering [GPSI] with a series of aggressive letters and payment demands." Opp. at 8. Essentially, GPSI contends that by taking these actions instead of serving a Legal Notice and initiating arbitration proceedings, Defendants waived their right to arbitrate this dispute.

As a threshold matter, the Court must determine whether the issue of waiver is one to be decided by the Court or instead a question properly submitted to the arbitrator. The answer depends on the type of waiver asserted. The Second Circuit has made clear that where a plaintiff

asserts a defense of waiver based on a defendant's litigation conduct, the issue of waiver is one for the Court to decide. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80–81 (2d Cir. 2017) ("When the party seeking arbitration has participated in litigation regarding the dispute, the district court can properly decide the question of waiver."); *See also Bell v. Cendant Corp.*, 293 F.3d 563, 569 (2d Cir. 2002). However, where a plaintiff's assertion of waiver is based on a defendant's pre-litigation actions, the issue of waiver is one for the arbitrator to decide. *Olin Holdings Ltd.,* 73 F.4th 92, 105 (2d Cir. 2023).

Here, GPSI's waiver argument is based on Defendants' actions before the filing of this lawsuit, not Defendants' conduct in this litigation. Therefore, GPSI's waiver argument is one for the arbitrator, not the Court, to decide. The Court thus declines to rule on this issue. *Herman v. Katten Muchin Rosenman LLP*, No. 25-cv-3162, 2025 U.S. Dist. LEXIS 167091, at *5–7 (S.D.N.Y. Aug. 27, 2025) (where a plaintiff "argues [that] Defendants' waiver occurred prior to - and not because of - Defendants' conduct litigating these claims. . . courts decline to decide the question of waiver.").

### IV.  GPSI is Required to Arbitrate its Claims Against Defendants Bennett and Verizon Communications Inc. Pursuant to the Agreement

GPSI also argues that the Court should deny the Motion because Defendants Basset and Verizon Communications Inc. are not signatories to the Agreement[4], and Defendants have failed to "carry their burden of showing that GPSI must be compelled to arbitrate claims against non-parties to the Agreement." Opp. at 10.

The Second Circuit, whose authority is binding on this Court, has ruled that a signatory to an arbitration agreement is estopped "from avoiding arbitration with a nonsignatory when the issues

---

[4] Verizon Wireless is the only defendant that is a signatory to the Agreement. *See* Bloink Decl., Exs. A–D.

the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Doe v. Trump Corp.*, 6 F.4th 400, 412 (2d Cir. 2021) (cleaned up). The Second Circuit has thus affirmed cases where courts have estopped a signatory from avoiding arbitration with nonsignatories in cases involving nonsignatory "subsidiaries, affiliates, agents, and other related business entities." *Id.* (cleaned up).

Here, the arbitration provision explicitly states that "the Parties agree to arbitrate ***any dispute arising out of this Agreement***." Bloink Decl., Ex. A at § 23 (emphasis added). Arbitration clauses that use such expansive language "are construed to require arbitration of statutory claims such as alleged civil rights violations ***and common law torts even if a plaintiff asserts claims against individuals who are not signatories to the arbitration agreement.***" *Shukla v. Viacom Inc.*, 2019 U.S. Dist. LEXIS 73680, at *27 (S.D.N.Y. May 1, 2019) (quotation marks and citation omitted) (emphasis added). *See also Doe v. Trump Corp.*, 6 F.4th 400, 412 (2d Cir. 2021); *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 225 (3d Cir. 2007) ("If appellant can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as defendants in his complaint, the effect of the rule requiring arbitration would, in effect, be nullified." (internal quotation marks and alterations omitted)); *Trott v. Paciolla*, 748 F. Supp. 305, 309 (E.D. Pa. 1990) ("Courts have often held non-signatories to be bound by arbitration agreements [because corporate entities] can only act through [their] employees and an arbitration agreement would be of little practical value of it did not extend to employees"). GPSI's claims against Defendants Bennett and Verizon Communications Inc. are identical to those against the remaining Defendants and are born from the exact same set of facts. These claims thus fall within the scope of the broad arbitration provision of the Agreement.

## V.   GPSI's Tort Claims (Counts III–VII) Fall Within The Scope of the Agreement

The Parties disagree on whether GPSI's tort claims fall within the scope of the arbitration clause in the Agreement between the parties. Both parties ask the Court to determine whether the arbitration clause is broad or narrow; however, they disagree on how the Court should proceed once it decides which category the arbitration provision falls into. Defendants claim that, should the Court decide that the arbitration clause in the agreement is "broad," then a presumption of arbitrability applies to Plaintiff's tort claims and this matter must be submitted to arbitration.[5] Defendants further argue that all issues touching matters governed by the Agreement are subject to arbitration. Plaintiff asks the Court to find that the arbitration clause is narrow pursuant to *Petition of Kinoshita & Co.*, 287 F.2d 951, 953 (2d Cir. 1961); Plaintiff argues that, should the Court decide otherwise, it should still hold that the tort claims are not subject to the Arbitration Clause if Defendants' conduct was beyond any reasonable foreseeability or contemplation at the time the contract was executed. Neither party is correct in its articulation of the analysis the Court must perform with respect to this issue. Therefore, the Court proceeds with a brief recitation of the applicable law and follows with an analysis and application of said law to this proceeding.

Essentially, both parties ask the Court to analyze the Arbitration Clause under the two-step framework historically used in this jurisdiction. *See, e.g., Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218 (2d Cir. 2001). Under this two-step framework, courts must first determine whether an arbitration clause is broad or narrow. *Id*. at 224. The next step of

---

[5] On Reply, Defendants contend that they do not argue for a presumption of arbitrability in their opening. Such an argument is directly at odds with their moving papers which state that Verizon's arbitration provision is "broad" which creates "a presumption of arbitrability," for which "there is no basis at all to overcome." Mot. At 6–7. As discussed in greater detail below, Defendants' argument that issues touching matters governed by the Agreement must be submitted to arbitration rescues its position, but it does not wipe it from existence.

the analysis depends on that determination; under the second step, if the clause is narrow, "the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Id*. (internal quotation marks and citation omitted). If the issue touches on or is connected to the main agreement, then it must be submitted to arbitration. If, however, the court determines that the arbitration clause is broad, then "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction of the parties' rights and obligations under it." *Id*. (internal quotation marks and citations omitted). However, recent caselaw makes clear that this two-step framework no longer applies to disputes concerning the scope of an arbitration provision. *See Xiaohong v. Dingledine*, 2025 U.S. Dist. LEXIS 108096, *11 (S.D.N.Y. June 6, 2025) ("[T]he Supreme Court's ruling *in Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010), abrogated prior Second Circuit caselaw directing courts first to identify the arbitration clause as broad or narrow and then to apply a presumption of arbitrability if the clause was broad."). Therefore, the Court declines to apply it here.

    The correct inquiry to apply in these circumstances can be gleaned from the Supreme Court's ruling in *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010), and the Second Circuit's interpretation and application of that case in *Local Union 97, International Brotherhood of Electrical Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 114 (2d Cir. 2023). *Granite* explains that "[i]t is well settled in both commercial and labor cases that whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." *Granite Rock Co*, 561 U.S. 287, 296 (citations and internal quotation

marks omitted). Therefore, a court may only compel arbitration where it is "satisfied that neither the formation of the parties' arbitration agreement nor . . . its enforceability or applicability to the dispute is in issue." *Id*. The *Granite* Court thus held that the presumption of arbitrability applies "only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and . . . the presumption is not rebutted." *Id*. at 301.

Then, in *Local Union* the Second Circuit, which is binding on this Court, explained how *Granite* should be applied to cases in this district. In its recitation of *Granite*, the Circuit made clear that following the Supreme Court's ruling, the two-step framework previously employed by the Second Circuit and its lower courts had been abrogated in part. *See Local Union*, 67 F.4th 107, 113 (2d Cir. 2023); *see also Xiaohong v. Dingledine,* 2025 U.S. Dist. LEXIS 108096, *11 (S.D.N.Y. June 6, 2025). [6] Rather than focusing on the breadth of the arbitration agreement, the Second Circuit instructed courts to consider "whether, under ordinary principles of contract interpretation, a particular dispute is covered by the language to which the parties agreed." *Id*. at 114. When performing this analysis, "[i]f the [court determines that the] allegations underlying the claims touch matters covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them." *Gallagher v. Pepe Auto Grp.*, 2019 WL 801955, at *4 (S.D.N.Y. Feb. 21, 2019) (internal quotation marks and citation omitted). Courts should also consider whether the factual allegations "are 'integrally linked' to the contractual relation; or whether they somehow 'pertain to' it." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 27–28 (2d Cir. 1995). The "presumption of arbitrability is [thus] a court's last, rather than first, resort" and is invoked "only where the parties' dispute concerns a valid and

---

[6] The Court is aware of at least one case post- *Granite* that still applies the two-step framework outlined above. *See Chaikin v. TransUnion, LLC*, 2025 U.S. Dist. LEXIS 59552 (S.D.N.Y. Mar. 26, 2025). As explained by the Second Circuit in *Local Union*, "to the extent that [*Chaikin* is] inconsistent with the Supreme Court's holdings *in Granite Rock*, [it] cannot be good law." *Local Union*, 67 F.4th 107, 114 (2d Cir. 2023).

13

enforceable agreement to arbitrate that is **ambiguous as to its scope**." *Local Union*, 67 F.4th 107, 113–114 (2d Cir. 2023) (emphasis added).

Here, at bottom, GPSI alleges that Defendants violated the Agreement by terminating its services and imposing over $600,000 in fees, which caused its business to fail. All of GPSI's tort claims (i.e., Counts III–VII) are predicated on these two actions by Defendants. Again, the Agreement's Arbitration Clause provides that "the Parties agree to arbitrate *any* dispute arising out of this Agreement." [7] Bloink Decl., Ex. A at § 23 (emphasis added). Moreover, the Agreement allowed for the termination of Verizon's services and the imposition of fees in certain circumstances. *See* Bloink Decl., Ex. A, §§ 7, 7.5(a), 12.4. Whether Verizon met the requirements to terminate services or impose fees as contemplated by the Agreement is thus expressly within the scope of said Agreement and is an issue the parties agreed to submit to arbitration. Therefore, GPSI's tort claims are arbitrable.[8] Accordingly, the Court refers GPSI's claims to arbitration.

---

[7] Plaintiff's citation to *Petition of Kinoshita & Co.*, 287 F.2d 951 (2d Cir. 1961) for the proposition that language such as "arising out of" is not broad enough to encompass fraud claims does not alter the Court's conclusion. In *Kinoshita*, the at-issue arbitration agreement stated that "The agreement to arbitrate is limited to such matters as those just enumerated when it refers to dispute or controversies 'under' or 'arising out of' the contract." *Id.* at 953. The court in *Kinoshita* ultimately held that this language was not broad enough to reach the plaintiff's tortious fraud claim. However, the Second Circuit has since made clear that *Kinoshita* is limited to its specific factual circumstances. *See Bristol-Myers Squibb Co. v. SR Int'l Bus. Ins. Co.*, 354 F. Supp. 2d 499, 505 (S.D.N.Y. 2005) ("Our Circuit thus repeatedly has limited Kinoshita to its precise facts, eroding the case into a tiny island of non-arbitrability in a vast arbitral ocean."). Further, "[t]he Second Circuit has distinguished the phrases 'arising from' and 'arising out of' from the clause in *Kinoshita*, deeming arbitration clauses that include those phrases to be 'broad' clauses." *China Media Express Holdings, Inc. by Barth v. Nexus Exec. Risks, Ltd.*, 182 F. Supp. 3d 42, 50 (S.D.N.Y. 2016). Therefore, *Kinoshita* does not support a finding that the Agreement does not extend to Plaintiff's tort claims here. Especially not here, where, as explained above, the Agreement controls whether Verizon was authorized to take the actions Plaintiff complains of.

[8] Plaintiff claims that (i) it has contracts with its customers that pre-date its agreement with Verizon with which Verizon tortiously interfered, and (ii) that Verizon's $600,000 in fees had no basis in the Agreement. Each argument fails. The factual allegation supporting Plaintiff's tortious interference claims (Counts Three and Four) is that Defendant intentionally and without justification shut off service to Plaintiff, which interfered with Plaintiff's ability to provide services to its clients. Compl. ¶¶ 109-117. Again, the Agreement provides for Defendant to terminate service under certain conditions. *See* Bloink Decl., Ex. A, §§ 7, 7.5(a), 12.4. Therefore, whether Defendant was entitled to terminate services is explicitly governed by the Agreement, and Plaintiff's tortious interference claims which are predicated on Defendant's actions are by extension governed by the Agreement and must be submitted to

### VI. Defendants' Motion to Stay These Proceedings

The Second Circuit has held that "the text, structure, and underlying policy of the FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015); *see also Porcelli v. JetSmarter, Inc.*, 2019 U.S. Dist. LEXIS 94287, at *11 (S.D.N.Y. June 5, 2019). As that is the case here, the Court hereby GRANTS Defendants' request for a stay and stays this case pending arbitration.

### VII. Defendant Bennett's Motion to Compel Arbitration

GPSI contends that Bennett is not expressly a signatory to the Agreement and thus, GPSI never agreed to arbitrate any claims it had against Bennett and cannot be compelled to do so. Defendant Bennett argues that the Arbitration Clause covers the claims against her because it requires GPSI to "arbitrate any dispute arising out of this Agreement." Bennett further contends that because the Complaint alleges that she was working on behalf of Verizon and because GPSI seeks to hold Verizon responsible for Bennett's actions, the Court may properly grant Bennett's request to compel arbitration.

In general, the contractual right to compel arbitration may not be invoked by one not party to the agreement with the arbitration provision. However, as discussed above, courts have estopped a signatory from avoiding arbitration with nonsignatories in cases involving non-signatory "subsidiaries, affiliates, agents, and other related business entities." *Doe v. Trump Corp.*, 6 F.4th 400, 412 (2d Cir. 2021). Here, as outlined above, GPSI's claims against Bennett include allegations that she was working as an agent for Verizon. Further, GPSI's claims against Bennett all arise out of or relate to her employment with Verizon, and specifically, actions that GPSI

---

arbitration. The same is true of Plaintiff's argument regarding fees in relation to its Fifth through Seventh Causes of Actions, which fail for the same reasons stated above.

alleges breached the Agreement between the parties. Accordingly, the arbitration provision within the Agreement covers GPSI's claims against Defendant Bennett. Defendant Bennett's Motion to Compel Arbitration is thus GRANTED.

## CONCLUSION

For the foregoing reasons, the Court refers GPSI's claims to arbitration and stays this action pending the outcome. Defendants' Motion to Compel Arbitration is **GRANTED**. The Court respectfully directs the Clerk of Court to terminate the pending motions at Dkt. Nos. 18 and 31. The parties are ordered to file a joint status report by January 15, 2026 and every 60 days thereafter.

**SO ORDERED.**

**Dated:** September 30, 2025

**New York, New York**                           **ANDREW L. CARTER, JR.**
                                                 **United States District Judge**